UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONTE MILLS,<br><br>        Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>        Defendant. | Case No. 1:22-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Before the Court is Defendant Union Pacific Railroad Company's ("Union Pacific") Request for Jury Site Visit. Dkt. 65.[1] Union Pacific asks the Court to authorize a jury view to familiarize the jury with a job qualifications test at issue in the present case. However, the jury view would require unacceptable risks of unnecessary delay, prejudice, and liability. Accordingly, and as explained in further detail below, the motion is DENIED.

# II. BACKGROUND

Plaintiff Monte Mills worked as a conductor for Defendant Union Pacific for over twelve years. In 2016, Union Pacific dismissed Mills after he failed a visual acuity test. Mills argues he failed because the novel test used by Union Pacific (the "Light Cannon")

---

[1] Having reviewed the record, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because it finds the decisional process would not be significantly aided by oral argument, the Court decides the Motion for Jury Site Visit on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

was not valid, reliable, or comparable; that he was otherwise qualified to do his job; and that his dismissal was unlawful under the ADA. Union Pacific counters, *inter alia*, that failing the Light Cannon test is a legally permissible means of determining that an individual is not qualified to be a conductor. Pursuant to this Court's order denying summary judgment, Dkt. 56, the significance of Mills's Light Cannon results will be decided by a jury.

In the instant motion, Union Pacific seeks permission to conduct a jury view at its railyard in Nampa, Idaho. Dkt. 65. Union Pacific proposes a live demonstration of the Light Cannon, which (it contends) will aid the jury in "viewing, understanding, and considering all relevant evidence in this case." *Id.*

Mills objects to Union Pacific's proposed jury view. Dkt. 66. He questions the probative value of a live demonstration in establishing the reliability of the Light Cannon, argues that the trip will cause unnecessary delay, and raises concerns regarding the safety of the court and jury. *Id.* Union Pacific has replied. Dkt. 67.

The matter is now ripe for review.

### III. LEGAL STANDARD

Federal courts have the inherent discretion "to permit a jury view of places or objects outside the courtroom." *United States v. Passos-Paternina*, 918 F.2d 979, 986 (1st Cir. 1990) (cleaned up). Courts considering a jury view request consider the totality of the circumstances, including the jury view's probative value, its logistical feasibility, and its necessity considering reasonable alternatives. 75 Am. Jur. 2d Trial §§ 190–191 (May 2025 Update); *see also United States v. Triplett*, 195 F.3d 990, 999 (8th Cir. 1999). Jury views

are rarely granted,[2] and should be denied if their probative value is substantially outweighed by the risks enumerated in Federal Rule of Evidence 403 as well as any safety risks to the jury. *See, e.g.*, *Green v. A.B. Hagglund & Soner*, 634 F. Supp. 790, 797 (D. Idaho 1986), *see also Passos-Paternina*, 918 F.2d at 986 (considering safety risks).

## IV. DISCUSSION

In determining whether jury views are appropriate, courts look first to their probative value. Evidence has probative value to the extent it might aid the jury in deciding a material question of fact. *See* F.R.E. 401. Here, the relevant questions of fact are, roughly: 1) whether Mills had the capacity to perform the essential functions of a train conductor with reasonable accommodations, 2) whether Mills's particular disability—colorblindness—was relevant to the job requirement of a train conductor, and 3) whether the Light Cannon fairly and accurately measured Mills's ability to perform the essential job functions of a train conductor. Dkt. 56, at 22, 26–27, 30.

Union Pacific suggests a jury view is necessary so the "jury and the Court will be able to view the Light Cannon and to observe a Union Pacific employee taking the [Light Canon test] in the manner Mills took the test." Dkt. 65, at 2–3. Union Pacific contends no physical evidence or testimony can "offer a more accurate portrayal" of the Light Cannon test than witnessing the test itself. Dkt. 67, at 2. Union Pacific also highlights there are no photographs or diagrams of Mills's failed Light Canon test in 2016, and that even Mills's

---

[2] *See, e.g.*, *Siemers v. BNSF Railway Co.*, 2019 WL 2124253, at *5 (D. Neb. May 15, 2019); *E.E.O.C. v. Hibbing Taconite Co.*, 2010 WL 2680988, at *1 (D. Minn. July 1, 2010); *Eagle N. Am., Inc. v. Tronox, LLC*, 2008 WL 1891475, at *4 (S.D. Ga. Apr. 29, 2008); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980) (noting jury views are "highly unusual").

experts have not seen the Light Canon device in person, let alone a demonstration of the test. *Id*. The Court disagrees.

An in-person demonstration of the Light Cannon would provide the jury with relatively little information as to Mills's capacity as a train conductor because it would not be probative of how Mills personally performed, either in the test or in the field. Nor would the demonstration show whether Mills's colorblindness is relevant to a train conductor's job requirements. Nor still would a jury view provide any direct evidence of whether the Light Cannon is fair and accurate. While it is possible that a jury view might aid the jury, that aid would be limited to helping orient jurors during subsequent expert testimony. A jury view would not, standing alone, be direct or circumstantial evidence of any material fact.

The probative value of the jury view is thus substantially outweighed by the risks of undue delay, cumulative evidence, unfair prejudice, and exposure of the court to unjustifiable liability risks. *See* F.R.E. 403. United Pacific can use photographs, charts, diagrams, and live testimony to orient the jury, all without leaving the courtroom. *See United States v. Bernal*, 533 Fed. App'x. 795, 796 (2013) (per curiam) (citing *Hughes v. United States*, 277 F.2d 515, 516 (9th Cir. 1967)). The Nampa rail yard is some 20 miles from the courthouse and Union Pacific itself estimates that a jury view would take half a day, fully one tenth of the currently scheduled trial (without accounting for voir dire or arguments). *Id.* Finally, the jury view is potentially dangerous and could expose the Court to liability. *See* Dkt. 66 at 2 (suggesting Union Pacific might require steel-toed boots, a hard hat, and safety glasses for anyone on their property); *see also Passos--Paternina*, 918

MEMORANDUM DECISION AND ORDER - 4

F.2d at 986. Together, these risks substantially outweigh the probative value of a jury view. Union Pacific's request is accordingly DENIED.

## V. ORDER

**IT IS HEREBY ORDERED:**

1. Defendant Union Pacific's Request for Jury Site Visit (Dkt. 65) is DENIED.

DATED: October 14, 2025

_____
David C. Nye
Chief U.S. District Court Judge