UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONTE MILLS,<br><br>        Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>        Defendant. | Case No. 1:22-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court are pretrial evidentiary motions from both parties. Dkts. 74; 79; 80.[1] Upon review, and for the reasons stated more fully below, the Court GRANTS IN PART Defendant Union Pacific Railroad Company's ("Union Pacific") Motion in Limine (Dkt. 74) and Plaintiff Monte Mills's Motion in Limine (Dkt. 79) and DENIES Mills's Objection to Defendants' Witness List (Dkt. 80).

## I. BACKGROUND

In a few days' time, Plaintiff Monte Mills will go to trial against Defendant Union Pacific. Mills will attempt to persuade the jury that he was unlawfully dismissed from his

---

[1] Having reviewed the record, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because it finds oral argument would not significantly aid the decisional process, the Court decides the Motions and Objection without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

railway conductor job because, though he is qualified to do the work, he is colorblind. Union Pacific will attempt to persuade the jury otherwise and will advance several affirmative defenses: that Mills's colorblindness posed a direct threat to the safety of the railroad, that Mills's claims are time-barred, that Mills failed to exhaust his administrative remedies, and that business necessity required the railroad to dismiss Mills. In preparation for trial, the parties raised several evidentiary objections. Dkts. 74; 79; 80. The Court ordered expedited briefing (Dkt. 81) and the parties have complied. Dkts. 85; 86; 87.

The matters are ripe for review.

## II. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cnty.*, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and,

therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## III. DISCUSSION

**A. Union Pacific's Motion in Limine (Dkt. 74)**

Union Pacific moves to exclude seven categories of discussion during trial: 1) evidence of other claims or litigation against Union Pacific; 2) reference to summary judgment or motions in limine; 3) evidence and argument related to punitive damages; 4) opinion testimony by Mills's witnesses of unfair treatment or violations of the law; 5) expert testimony on ultimate legal conclusions; 6) evidence or argument related to injunctive relief; and 7) evidence or argument that the Light Cannon does not comply with Federal Railroad Administration ("FRA") regulations. Dkt. 74. The Court will address each in turn.

*1. Evidence of Other Claims or Litigation*

Union Pacific argues that evidence of other claims or litigation against Union Pacific should be excluded because it would be irrelevant and unduly prejudicial. Dkt. 74-1, at 2–5. Mills argues that such evidence is probative of Union Pacific's motive, intent, and the possibly pretextual nature of its decision to terminate him. Dkt. 87, at 1–2. Mills further argues that comparator complaints are relevant to his claim for punitive damages. *Id.* While Mills acknowledges that some evidence of other claims should be excluded, he asks the Court to adopt a case-by-case approach rather than the blanket prohibition Union Pacific seeks.

The Court grants Union Pacific's motion and will not allow Mills to discuss past or pending litigation in general. The fact that some other claims against Union Pacific resulted in litigation is not probative of the claims in this case, and risks prejudicing the jury based on untested litigation allegations against Union Pacific. *See* Fed. R. Evid. 403. Whether Mills can question other employees about the underlying conduct which led to that litigation, however, is more complex.

Evidence the defendant harmed third parties is not typically admissible to show the defendant similarly harmed the plaintiff. Fed. R. Evid. 404. However, evidence of other discriminatory acts is admissible if it is probative of a defendant's motive, intent, or pretextual explanation. *See Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995); *see also* Fed. R. Evid. 404(b). Such "me too" evidence is neither categorically relevant or irrelevant; admissibility depends on a fact intensive inquiry into how closely related the evidence is to the plaintiff's case and how the evidence relates to the plaintiff's theory. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008).

Mills offers no information about his "me too" evidence from which the Court could conduct such an inquiry. Because the Court cannot determine from the present record whether Mills's comparators meet that burden, *see id.* (discussing the fact intensive, case-by-case analysis required for "me too" evidence), the Court reserves ruling on this facet of Union Pacific's motion.

To enable the Court to determine whether Mills's "me too" evidence is admissible, Mills must disclose the names, relevant dates, and factual bases for any "me too" evidence to Union Pacific and the Court by 12:00 NOON MDT on Friday, October 24, 2025. Both

MEMORANDUM DECISION AND ORDER - 4

parties should be prepared to discuss the propriety of Mills's proposed evidence at the final pretrial conference and shall refrain from referencing any such evidence at voir dire or in opening arguments until the Court has ruled. *See Houserman v. Comtech Telecomms. Corp.*, 519 F. Supp. 3d 863, 872 (W.D. Wash. 2021).

    *2. Reference to Summary Judgment or Motions in Limine*

Union Pacific next seeks to prohibit Mills from mentioning the Court's pretrial rulings. Dkt. 74-1, at 5–6. Mills agrees that neither party should be permitted to discuss the pretrial motions except as necessary to correct any misleading impressions the other party leaves with the jury. Dkt. 87, at 2–3. The Court therefore GRANTS Union Pacific's motion. Neither party shall make reference to any pretrial motions in any way unless necessary to correct a manifest possibility that the jury would be misled by the other party. Even then, should a party feel it necessary to discuss a prior Court ruling, the matter should first be raised with the Court outside the jury's presence.

    *3. Evidence or Argument Related to Punitive Damages*

Union Pacific also argues that Mills should be barred from presenting evidence on, or making argument seeking, an award of punitive damages. Dkt. 74-1, at 6–7. It argues that such evidence is routinely excluded until the Court orders otherwise and that Mills offers no evidence to support its claims. *Id.* Mills counters that Union Pacific is trying to smuggle a motion for summary judgment on the issue of punitive damages into its motion in limine and argues that the Court should let all punitive damages evidence in with a proper limiting instruction. Dkt. 87, at 3–4.

MEMORANDUM DECISION AND ORDER - 5

This is a pure federal question case; thus, Mills's entitlement to punitive damages depends on whether he can satisfy the requirements of 42 U.S.C. § 1981a. *See* Dkt. 1, at 5–6; *see also* 42 U.S.C. § 1981a(a)(2) (applying § 1981a(b) to ADA cases). Section 1981a(b)(1) provides:

> A complaining party may recover punitive damages under this section against a respondent . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

"Under federal law, ability to pay is of some importance in assessing the propriety of a punitive damages award but it is not dispositive." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 806 (9th Cir. 2018) (cleaned up).

This Court has occasionally barred plaintiffs from introducing evidence of the defendant's financial condition until after the plaintiff has introduced evidence sufficient to justify an award of punitive damages. *See, e.g.*, *Doe v. Cutter Biological*, 844 F. Supp. 602, 610 (D. Idaho 1994); *Spain v. McMillan*, 2005 WL 8165288, at *2 (D. Idaho Mar. 2, 2005). In those cases, however, Idaho law provided the rule of decision and Idaho law strongly disfavors punitive damages. Idaho Code § 6-1604; *see also Cutter Biological*, 844 F. Supp. at 609–10. Because this case arises under the federal ADA, *Cutter Biological* and its progeny are inapposite.

Moreover, this Court has never barred *all* evidence regarding punitive damages unless it previously granted summary judgment against those claims. Instead, the Court barred the claimant from introducing evidence of the respondent's financial state, and lifted

MEMORANDUM DECISION AND ORDER - 6

that bar when the claimant introduced sufficient evidence to submit the punitive damages issue to the jury. *Cutter Biological*, 844 F. Supp. at 610; *Spain*, 2005 WL 8165288, at *2.

While *Cutter Biological* is not on all fours with this case, there is wisdom to its approach. Evidence of Union Pacific's finances carries a substantial risk of unfair prejudice because, as the Supreme Court has recognized, "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses . . . ." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *see also McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975–76 (4th Cir. 2020) (reversing the district court for failing to bifurcate punitive damages from liability given the prejudice caused by introducing the defendant's financial position and the vagueness of the limiting instruction given).

The Court will therefore adopt the *Cutter Biological* approach. If the Court finds that Mills introduces sufficient evidence from which a reasonable jury could conclude that Union Pacific acted with malice or reckless indifference, Mills may introduce evidence related to Union Pacific's financial position. Until he does so, however, such evidence is irrelevant and unduly prejudicial, and may not be admitted or discussed in front of the jury.

Mills also argues he needs to use Union Pacific's financial information for a different reason: to prove it was financially capable of accommodating him. Dkt. 87, at 4. The financial feasibility of accommodation, however, arises in the context of Union Pacific's direct threat affirmative defense. *Id.* Unless Union Pacific puts the financial feasibility of accommodating Mills into issue when presenting its direct threat defense,

Union Pacific's financial position is of no probative value. The threat of unfair prejudice, however, would remain high. *See State Farm*, 538 U.S. at 417.

Thus, if Union Pacific opens the door by arguing it was not financially capable of accommodating Mills, Mills may rebut that assertion with evidence of Union Pacific's financial position. Otherwise, the risk of unfair prejudice substantially outweighs its probative value. *See* Fed. R. Evid. 403.

Accordingly, the Court GRANTS Union Pacific's Motion with respect to financial position evidence, pending either the Court finding sufficient evidence to submit the issue of punitive damages to the jury or Union Pacific putting its financial position into issue. The Motion is otherwise DENIED.

*4. Opinion Testimony on Unfair or Illegal Treatment*

Next, Union Pacific asks the Court to exclude lay opinion testimony as to whether Union Pacific treated any individuals fairly or legally. Dkt. 74-1, at 7–8. Mills agrees that asking lay witnesses to testify on ultimate legal conclusions would be improper but argues the Ninth Circuit permits lay testimony synthesizing workplace experience. Dkt. 87, at 5 (citing *United States v. Beck*, 418 F.3d 1008, 1015–16 (9th Cir. 2005)).

Federal Rule of Evidence 701 allows lay witnesses to testify in the form of an opinion when the opinion is rationally based on their perception and aids the jury in understanding the witness's testimony. Without knowing the testimony Mills seeks to elicit the Court cannot make a definitive ruling. However, Mills appears to be mostly correct: testimony as to ultimate legal conclusions would be inappropriate; testimony as to how a witness felt could be irrelevant; most other lay opinion testimony can be adequately

developed on cross examination. Union Pacific's Motion is therefore TAKEN UNDER ADVISEMENT as to lay opinion testimony pending disclosure of the testimony itself.

*5. Expert Opinion Testimony as to the Ultimate Issue*

Union Pacific further asks that Mills be barred from asking his experts questions going to ultimate legal conclusions, although it acknowledges that experts may testify as to ultimate questions of fact. Dkt. 74-1, at 8–9 (citing Fed. R. Evid. 704). Mills agrees that he cannot elicit testimony as to ultimate legal conclusions, but insists that his experts can testify as to ultimate questions of fact. Dkt. 87, at 5. Both parties acknowledge the correct distinction between ultimate facts and ultimate legal conclusions: experts may testify as to whether a factual predicate for a legal conclusion exists, but they cannot testify that the legal conclusion itself is proper or improper. *See* Fed. R. Evid. 704. Because Mills does not dispute Union Pacific's position, the Motion is GRANTED with respect to expert opinion testimony.

*6. Mention of Injunctive Relief and its Predicates*

Union Pacific's penultimate request is for the Court to exclude any mention of injunctive relief or evidence probative thereof. Dkt. 74-1, at 9–10. Mills argues the Court should grant the former request and deny the latter. Dkt. 87, at 6. The Court agrees with Mills. The Court must determine whether to issue an injunction, but that process requires reaching conclusions of fact. The Court can enlist the aid of the jury in reaching those conclusions if it so chooses. *See* Fed. R. Civ. P. 39(c). Where, as here, issues of fact are already being put to a jury, utilizing an advisory jury promotes judicial consistency and efficiency. Moreover, a blanket prohibition on introducing evidence probative of whether

MEMORANDUM DECISION AND ORDER - 9

an injunction should issue could plausibly reach evidence important for determining liability on the merits. While the parties should not mention equitable remedies by name, the Court will not prohibit Mills from introducing evidence bearing on whether an injunction should issue. In the meantime, the Court will determine whether, and in what form, to present such questions to a jury.

    *7. Evidence or Argument that the Light Cannon does not Comply with FRA Regulations*

Finally, Union Pacific asks the Court to find that Mills is judicially estopped from contesting whether the Light Cannon complies with FRA regulations because Mills's counsel conceded as much during oral argument on a prior motion. Dkt. 74-1, at 10–13. Mills argues that to be judicially estopped, a party must have persuaded a court to accept a position, which his counsel failed to do. Dkt. 87, at 6.

The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (citing *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998) (noting the Ninth Circuit has adopted the majority rule that acceptance is categorically required)). The Court did not rely on Mills's counsel's apparent concession in reaching any decision favorable to Mills. Union Pacific counters that the Court "accepted" Mills's statement by noting that the position constituted an apparent admission during oral argument. The Court's acknowledgment of a concession at oral argument, however, is not "acceptance" unless the Court later relies on the concession in

reaching its decision. *See Hamilton*, 270 F.3d at 783. Judicial estoppel is therefore inapplicable, and Union Pacific's Motion is DENIED with respect to its judicial estoppel arguments.

### B. Mills's Motion in Limine

Mills, for his part, moves to exclude evidence regarding his Railroad Retirement Board benefits and evidence that the Light Cannon conforms to FRA regulations. Dkt. 79. Mills argues the Court found at summary judgment that the issue of whether the Light Cannon complies with FRA regulations is completely irrelevant to this case and cites *Walker v. Union Pac. R.R. Co.*, 2024 WL 5165208 (D. Or. Dec. 19, 2024) to support its Motion. *Id.* Union Pacific opposes Mills's Motion as to FRA findings. Dkt. 85. It argues that Mills misconstrues the Court's order, and that *Walker* is inapposite. *Id.* Union Pacific is correct.

The Court at summary judgment held that the Light Cannon's compliance (or lack thereof) with FRA regulations was not *dispositive*. Dkt. 56, at 11;13. It did not find the issue *irrelevant*. On the contrary, the Court found that a jury could properly consider the Light Cannon's compliance with FRA regulations in determining whether Union Pacific met its affirmative defenses. Dkt. 56, 10–11. Accordingly, Mills's Motion is DENIED as to the Light Cannon's compliance with FRA regulations.

Union Pacific does not address Mills's Motion as applied to his Railroad Retirement Board benefits. Upon review, the Court finds this information is irrelevant to any issue at trial and is properly excluded. Thus, the Motion is GRANTED in that respect.

### C. Mills's Objection to Union Pacific's Witness List

Mills objects to Union Pacific's witness list with respect to Rodney Doerr and Carl Garrison. Dkt. 80. After meeting and conferring, the parties agreed that the objection should be withdrawn as to Mr. Garrison. Dkt. 86. As to Mr. Doerr, however, Mills maintains his objection.

Union Pacific notes that it disclosed Mr. Doerr two years ago, that Mills noticed Mr. Doerr's deposition, that he did not depose Mr. Doerr as noticed, and that Mills did not re-notice Mr. Doerr for deposition. Dkt. 86. As Mills would not be unfairly prejudiced by Union Pacific calling Mr. Doerr, the objection is OVERRULED.

## IV. CONCLUSION

Both parties advanced multiple issues which, they assert, should not be discussed at trial. The Court has analyzed and decided those issues to the best of its ability at this stage of the case. Should the evidence or testimony at trial suggest a different result on any particular issue, the parties should raise the matter with the Court outside of the jury's presence for further discussion and resolution.

## V. ORDER

**IT IS HEREBY ORDERED:**

1. Union Pacific's Motion in Limine (Dkt. 74) is GRANTED IN PART and DENIED IN PART as follows:
   a. As to testimony that other litigation exists against Union Pacific, the Motion is GRANTED.

    b. As to testimony of other discriminatory acts by Union Pacific, the Motion is TAKEN UNDER ADVISEMENT.

    c. As to reference to pretrial motions, the Motion is GRANTED.

    d. As to evidence or argument supporting a claim for punitive damages, the Motion is DENIED except as to evidence of Union Pacific's financial position. In that respect, the Motion is GRANTED, pending the Court's determination as to whether the issue of punitive damages may be submitted to the jury *or* until Union Pacific puts its financial position into issue.

    e. As to lay testimony, the motion is TAKEN UNDER ADVISEMENT pending disclosure of the testimony itself.

    f. As to expert opinion testimony, the Motion is GRANTED.

    g. As to injunctive relief, the Motion is DENIED.

    h. As to judicial estoppel, the Motion is DENIED.

2. Mills's Motion in Limine (Dkt. 79) is GRANTED IN PART and DENIED IN PART as follows:

    a. As to Mills's RRB benefits, the Motion is GRANTED.

    b. As to the Light Cannon's compliance with the FRA, the Motion is DENIED.

3. Mills's Objection to Union Pacific's Witness List (Dkt. 80) is DENIED.

4. Mills is ORDERED to disclose the names, relevant dates, and factual bases for his "me too" evidence to Union Pacific and the Court by 12:00 NOON MDT on

Friday, October 24, 2025. Both parties should be prepared to discuss the propriety of Mills's proposed "me too" evidence at the final pretrial conference and shall refrain from referencing any such evidence at voir dire, in opening arguments, or through testimony until and unless the Court determines such evidence is admissible.

DATED: October 23, 2025

_____
David C. Nye
Chief U.S. District Court Judge