UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONTE MILLS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>　　　　　Defendant. | Case No. 1:22-cv-00143-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Monte Mills's Motion for Front Pay. Dkt. 127. Mills seeks an award of front-pay damages to compensate him for his anticipated earnings through his remaining work life expectancy. Because the jury found that Mills is a qualified individual within the meaning of the Americans with Disabilities Act ("ADA"), and because federal law gives unlawfully terminated qualified individuals a right to prospective remedies, the Court GRANTS the Motion IN PART and awards Mills $121,860.27 in front pay.

## II. BACKGROUND

After a five-day trial, a jury found Union Pacific violated the ADA when it terminated Mills and awarded him $767,842.18 in backpay. Dkt. 113. The remedy for prospective harm is an equitable matter for the Court, so the jury did not address how Mills should be made whole going forward.

MEMORANDUM DECISION AND ORDER - 1

Mills now seeks an award of $174,106.59 in front pay. Dkt. 127. Union Pacific objects, arguing Mills is not qualified to be a locomotive engineer under Federal Railroad Administration ("FRA") regulations and further, that he has presented no evidence he could become qualified now; thus, Union Pacific's actions are not responsible for his loss of pay going forward. Dkt. 128. Mills has replied. Dkt. 130.

The motion is now ripe for review.

### III. LEGAL STANDARD

The Court has broad latitude in remedying an ADA violation, including by ordering the employer to reinstate an unlawfully terminated employee. 42 U.S.C. § 1981a (incorporating by reference 42 U.S.C. § 200e-5(g) (listing powers)). When reinstatement is impossible or impractical, however, the Court may order front pay instead. *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1156 (9th Cir. 1999). Because front pay is awarded in lieu of reinstatement, it is an equitable remedy. *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 853 (2001)). Thus, both the availability and the amount of front pay must be determined by the Court. *See id.*; *see also Traxler v. Multnomah County*, 596 F.3d 1007, 1011-12 (9th Cir. 2010) (discussing equitable front pay in the FMLA context). ADA plaintiffs seeking front pay must, therefore, persuade the Court of three facts: first, that equity requires a prospective remedy; second, that reinstatement is impractical; and third, that the amount of front pay requested is consistent with the demands of equity.

### IV. DISCUSSION

Union Pacific focuses its objection on the threshold issue of whether a prospective

MEMORANDUM DECISION AND ORDER - 2

remedy is warranted at all. It argues that Mr. Mills is not currently qualified to work as a locomotive engineer; therefore, it should not be held liable for Mills's inability to earn a locomotive engineer's pay from the verdict forward. If the Court disagrees with Union Pacific, it would ordinarily have to determine whether reinstatement is feasible. However, neither party argues that the Court should or could reinstate Mr. Mills, and the Court agrees that reinstatement is not feasible in light of Mills's lack of an FRA certification. Thus, if a prospective remedy is warranted, the Court must award front pay in the amount supported by equity and the evidence.

### A. Availability of Remedy for Prospective Relief

Mills argues that he is entitled to prospective relief because the jury found Union Pacific violated his rights under the ADA, and he has no reasonable prospect of returning to work as a locomotive engineer. Union Pacific argues that prospective relief is unavailable to Mills because Mills failed to put on evidence that he could presently qualify for employment under FRA regulations.

The jury found that Mills was a qualified individual at the time he was terminated, and the Seventh Amendment requires the Court to abide by that finding under the Seventh Amendment. In *Teutscher v. Woodson*, the Ninth Circuit discussed how a court should treat a jury's factual findings in subsequent equitable proceedings:

> [I]n cases in which legal and equitable claims turn on common issues of fact, any legal issues for which a trial by jury is timely and properly demanded must be submitted to a jury, and the jury's determination of the legal claims must occur prior to any final court determination of the equitable claims. Because the Seventh Amendment's second clause prohibits the courts of the

MEMORANDUM DECISION AND ORDER - 3

> United States to re-examine any facts tried by a jury except as permitted under the narrow modes known to the common law, the court then must abide by the jury's findings of fact in making any subsequent rulings.
>
> It follows that in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and those claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims. The trial court must do so in determining both liability and relief on the equitable claims.

835 F.3d 936, 944 (9th Cir. 2016) (citation modified).[1]

A motion for front pay, standing alone, is not one of the "modes known to the common law" for questioning a jury verdict. *See id.* Thus, while the availability of front pay is an equitable question for the Court, *see Bayer*, 861 F.3d at 866; *Traxler*, 596 F.3d at 1011-12, when the availability of front pay depends on a question of fact decided by the jury, the Court must defer to the jury's relevant factual findings if the parties were entitled to a jury trial on that issue. *Teutscher*, 835 F.3d at 944. Whether an ADA plaintiff is a qualified individual is a question of fact. *See Hason v. Med. Bd. of California*, 279 F.3d 1167, 1173 (9th Cir. 2002) (treating qualified individual status as a question of fact). And

---

[1] The *Teutscher* court's subsequent string of citations clarifies that deference to the jury's findings is appropriate in deciding whether to award front pay under the ADA via its incorporation of Title VII's remedies provisions. 835 F.3d at 944 ("*See Miller*, 885 F.2d at 506–07 (holding that 'the district court in deciding the Title VII [equitable] claim will be bound by all factual determinations made by the jury in deciding' the plaintiff's legal claims); *see also Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 966 (10th Cir. 2002) (holding that the trial judge impermissibly 'disregarded the jury's implicit finding[s]' when the judge denied the wrongfully discharged plaintiff equitable relief of front pay for reasons inconsistent with the jury's findings); *EEOC v. Century Broad. Corp.*, 957 F.2d 1446, 1463 (7th Cir. 1992) ('[I]n deciding whether to grant equitable relief under Title VII, the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury.' (second alteration in original) (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 355 (7th Cir. 1987)))).").

MEMORANDUM DECISION AND ORDER - 4

Mills sought compensatory and punitive damages over $20, giving him a Seventh Amendment right to a jury trial on liability. *Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1068 (9th Cir. 2005). The Court must, therefore, defer to the jury's finding that Mills was a qualified individual at the time he was terminated.

Union Pacific argues that, even if the jury was correct in finding Mills was a qualified individual when he was terminated, it could not have determined he is currently qualified because he does not currently possess an FRA certification and has not shown he could obtain one if he tried.

If FRA certification was conducted by an independent authority which tested all applicants, then perhaps FRA certification would be a job-related requirement which an ADA plaintiff must satisfy before bringing suit.[2] But that is not the case. FRA certification is conducted by railroads. Although certification programs must comply with FRA regulations and secure FRA approval, the programs themselves are developed by the individual railroad. Railroads have significant discretion in crafting field tests in particular. And the railroads are only obligated to test individuals they seek to employ as locomotive engineers. As the Court has already found, these distinguishing characteristics mean that railroad safety programs must satisfy both the FRSA/RSIA[3] *and* the ADA, implying that failure to hold an FRA certification does not preclude someone from being a qualified individual within the meaning of the ADA. Dkt. 56, at 21–24. Mills's present failure to

---

[2] The FRA, in fact, proposed a similar program (which it described as resembling state programs for issuing drivers' licenses) but ultimately did not implement the program because it felt the statute required railroad-developed programs subject to FRA guardrails. 56 Fed. Reg. 28230 (June 19, 1991).
[3] Federal Railroad Safety Act and Rail Safety Improvement Act, respectively.

MEMORANDUM DECISION AND ORDER - 5

hold FRA certification is thus a circumstance rendering reinstatement infeasible rather than a missing "job-related requirement" preventing him from obtaining front pay here.

Union Pacific's final argument—that Mills has not shown he could presently obtain FRA certification—fails because it misapplies the burden of proof on that issue at the front-pay stage. Once the jury has found that the plaintiff was a qualified individual for liability purposes, the defendant bears the burden of showing that the plaintiff ceased to be qualified.[4] *Peinado v. S. Pac. Transp. Co.*, 1996 WL 449184 at *4 (N.D. Cal. July 31, 1996) ("The plaintiff meets his burden of proof in regard to front pay by identifying specific positions upon which an award of damages may be based. Once the plaintiff has met this burden of identification, the burden shifts to the employer to prove that the plaintiff was not qualified for the identified positions." (citation modified)); *see also Fadhl v. City & Cnty. of San Francisco*, 741 F.2d 1163, 1166 (9th Cir. 1984) *abrogated in part on other grounds, Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) ("[I]f it is shown that the [plaintiff] was not qualified for the position, than [*sic*] neither back pay, nor so-called front pay, may be awarded. The [defendant] has the burden of proof on this issue.").

Union Pacific presents no evidence that Mills ceased to be a qualified individual between termination and the present day. Although Mills testified that he could not pass the Light Cannon again, the jury found the Light Cannon did not comply with the ADA's

---

[4] To be clear, the plaintiff bears the overall burden on the issue of damages. *Gotthardt*, 191 F.3d at 1158. But the plaintiff carries that burden by showing "the difference between actual earning for the period and those which she would have earned absent discrimination." *Id.* Once liability is found and the plaintiff carries the burden of coming forward with evidence of the amount of damages, the defendant bears the burden of proving any defenses to the amount of damages. *See id.*

requirements for testing exceptions.[5] Union Pacific has, therefore, failed to carry its burden on the issue of Mills's qualified individual status for front pay purposes.

Accordingly, Mills has established his entitlement to prospective equitable relief.

### B. Amount of Front Pay Damages

Neither party argues that reinstatement is feasible, nor does it appear that Mills could be reinstated because the relationship appears irretrievably broken and Union Pacific could not retest Mills until the Light Cannon is modified (or a new test is developed) and the test obtains FRA approval. *See Gotthardt*, 191 F.3d at 1156. That may take far longer than the 21 months remaining in Mills's work life expectancy. Thus, the Court will order front pay in lieu of reinstatement.

Mills requests $174,106.59 in front pay. Dkt. 127, at 2. He reaches this number by multiplying the average monthly amount the jury awarded in back pay ($8,290.79; of which Mills allocates $6,928.28 to lost wages and $1,362.51 to benefits) by the number of months of Mills's work life expectancy. While the jury's award is a useful starting point, the Court has an independent duty to determine an equitable amount of front pay.

The number of months to be awarded and the monthly value of Mills's benefits can be dealt with swiftly. It is undisputed that Mills's remaining work life expectancy was 21 months from the day the jury issued its verdict. Dkt. 127, at 4. And Mills offered testimony that his benefits were worth $16,350 per year (that is, $1,362.50 per month). That number

---

[5] For the same reasons the Court must defer to the jury's finding on Mills's qualified individual status, the Court is bound, for the purposes of this motion, by the jury's finding that Union Pacific did not satisfy its affirmative defenses, including the business necessity defense regarding the Light Cannon. *See Teutscher*, 835 F.3d at 944.

is supported by competent evidence and Union Pacific does not suggest that amount is unreasonable; thus, the Court will adopt that amount and award 21 months of front pay for benefits in the amount of $1,362.50 per month for a total of $28,612.50.

When he requests front pay for lost wages, however, Mills asks too much. In his closing argument at trial, Mills's counsel asked the jury to award back pay in the amount of the average difference between what Mills actually made in the years after his termination and what two similarly-situated Union Pacific employees—referred to as "Employee B" and "Employee C"—made in those years. Take 2024 for instance. Mills made $21,028.26, whereas "Employee B" made $99,068.68 and "Employee C" made $109,266.44. Mills's counsel added together Employees B and C's annual wages,[6] divided by 2 to obtain B and C's average 2024 wage,[7] and then subtracted out Mills's wages for the same year[8] to arrive at a requested award of $83,139.30 for 2024. *See* Dkt. 127-1. Mills asks the Court to use that same method for calculating front pay.

Mills's counsel's method for calculating lost wages is not supported by the evidence.[9] For each of the three years where Mills, Employee B, and Employee C worked together, Mills earned less than both comparator employees:

---

[6] $99,068.68 + $109,266.44 = $208,335.12.
[7] $208,335.12 / 2 = $104,167.56.
[8] $104,167.56 - $21,028.26 = $83,139.30.
[9] Under Ninth Circuit ADA precedent, the proper amount of back pay is a matter of equity and a question of law for the Court. *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir. 2005) (holding that under the ADA, "there is no right to have a jury determine the appropriate amount of back pay," which "remains an equitable remedy to be awarded by the district court in its discretion"). Thus, the Court is not bound by the Seventh Amendment as to the jury's determination of the reasonable rate of lost wages.

MEMORANDUM DECISION AND ORDER - 8

| YEAR | MILLS | EE. B | EE. C | B+C AVG. | MILLS ÷ B+C AVG. |
|---|---|---|---|---|---|
| 2015 | $64,830.26 | $82,359.33 | $74,327.47 | $78,343.40 | 82.8% |
| 2014 | $70,639.83 | $88,298.46 | $74,397.61 | $81,348.04 | 86.8% |
| 2013 | $63,723.12 | $83,008.84 | $77,281.66 | $80,145.25 | 79.5% |
| AVG. 2013-15 | $66,397.74 | $84,555.54 | $75,335.58 | $79,945.56 | 83.1% |

*Fig. 1: Mills's Salary as a percentage of the average of Employees B & C's salaries*

T.T. Vol. II, 340–41. As illustrated in Figure 1, between 2013 and 2015, Mills's salary averaged almost 17% less than the average of Employee B and C's salary for that year. In fact, Mills never earned more than *either* B or C in the three years they worked together. Mills's counsel's calculations would necessarily credit Mills for earning more than one comparator; thus, his calculations are unsupported by the evidence.

To properly account for Mills's expected earnings relative to the comparators, the Court will take the mean of Employees B and C's salaries between 2016 (when Mills was terminated) and 2024 (the last year for which evidence was admitted).[10] That number, $92,642.05, represents the average of B and C's salary for those nine years. Next, the Court will multiply that number by 83.1% (because, between 2013 and 2015, for every dollar B and C earned on average, Mills earned 83.1¢). The resulting number—$76,985.54— represents a reasonable estimate of what Mills would have earned annually, on average, between 2016 and 2024 given what B and C earned on average over that same period.

Subtracting Mills's average actual earnings from 2016–2024 ($23,701.10) gives

---

[10] To take the mean of Employees B and C's salaries from 2016–2024, the Court adds together all 18 annual salaries (9 for B and 9 for C) and divides by 18.

MEMORANDUM DECISION AND ORDER - 9

$53,284.44: the annual amount by which Mills's expected lost wages exceeded his actual earnings. Dividing the annual amount by 12 gives $4,440.37. The Court finds that $4,440.37 is a reasonable monthly estimate of the amount Mills's lost future earnings will exceed his actual income. Multiplying the monthly loss by 21 gives $93,247.77, the proper amount that Mills can reasonably expect to have earned over his remaining work life expectancy. Adding back the $28,612.50 already awarded for 21 months of benefits gives **$121,860.27**, the proper amount of front pay supported by equity and evidence.

The Court, therefore, awards Plaintiff Monte Mills $121,860.27 in front pay and his Motion is GRANTED IN PART to that extent.

## V. CONCLUSION

This order does not address whether the jury's verdict was proper or whether the amounts it awarded are legally correct. But given the jury's verdict, and considering the continuing barriers to his employment, the Plaintiff is presently entitled to an award of front pay in the amount of $121,860.27.

## VI. ORDER

1. Plaintiff Monte Mills's Motion for Front Pay (Dkt. 127) is GRANTED IN PART.
2. Monte Mills is hereby awarded $121,860.27 in front pay equitable damages.



DATED: February 18, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 10